# LAW OFFICES OF GAMBINO & DEMERS LLC

222 CHURCH STREET  
POUGHKEEPSIE, NEW YORK 12601

PHONE (845) 473-0427  
FAX (845) 473-0428

**MEMO ENDORSED**

THOMAS M. GAMBINO, ESQ.     TGAMBINO.GAMBINODEMERS@GMAIL.COM  
KIM P. DEMERS, ESQ.     KDEMERS.GAMBINODEMERS@GMAIL.COM

April 18, 2025

<u>via ecf</u>  
Hon. Victoria Reznik  
United States District Court  
Southern District of New York  
300 Quarropas Street  
White Plains, NY 10601

Re: <u>Taranto v. Putnam County, et al - Docket #: 21-cv-02455 (VR)</u>

Dear Magistrate Reznik:

The following is submitted on behalf of Plaintiffs in response to Defendants' pre-motion letter seeking summary judgment with respect to Plaintiffs' Fourth Amended Complaint (FAC). I have conferred with defense counsel prior to the filing of this response and defer to your Honor whether the Court's deems a pre-motion conference necessary. I also have no objection to the deadline proposed by defense counsel within which their motion is to be filed. At this time, Plaintiff intends to oppose Defendants' summary judgment and will likely not file a cross motion for partial summary judgment.

Depositions have been completed, which included those of the parties, non-party witnesses, Plaintiffs' three expert witnesses and the medical examiner who examined the decedent. Additionally extensive documents have been exchanged, including Mr. Taranto' (Decedent's) medical records.

As alleged in the FAC, Decedent was suffering from early dementia at the time of the underlying incident and had open heart surgery just prior to the incident. He was 75 years of age at that time and was in frail condition. Plaintiffs have pled in sufficient detail within the FAC the causes of action noted therein, including excessive force, false arrest, malicious prosecution and the underlying State claims, and as will be demonstrated by documentary evidence and the testimony adduced during depositions.

Contrary to Defendants' assertions, the force utilized by Defendants at the time of their encounter with George Taranto was excessive and beyond acceptable modern-day police practices and training. Defendants' patrol policies and use of force procedures in effect at the time of this incident were out of day by at least three decades.

By way of example, the Putnam County Sheriff's Office still permitted deputies to carry impact weapons, such as black-jacks and slap-jacks, at the time of the underlying incident. These weapons were phased out from police departments as far back as the 1980's. Defendants' Use of Force form indicates that the deputies used an "impact weapon" upon Mr. Taranto, who was admitted to Putnam Hospital while still in police custody with significant and sever injuries to his skull. The time stamp of the camera within the police vehicle clearly denotes the length of time Mr. Taranto remained handcuffed and inside that vehicle without necessary medical attention. Mr. Taranto suffered respiratory failure and pulmonary edema while at Putnam Hospital and placed on life support as a result of the force utilized upon him by the deputies shortly after his was assaulted by the deputies. He never left police control from the time of his arrest until the time he was admitted to the hospital and placed on life support.

Although Defendants' claim EMT's treated Mr. Taranto on scene, no EMT was identified. Further, a Fire Department supervisor who was present at the site due to an unrelated transformer explosion was subpoenaed to be deposed by Defendants but did not appear.

Contrary to Defendants' assertion, the injuries sustained by Mr. Taranto and resulting effect upon him are documented by his medical records exchanged during discovery. Plaintiff's expert, Dr. Nekrich, credibly testified during his deposition that the injuries sustained by Mr. Taranto were based upon the assaultive actions of Defendants and not simply from a fall as they contend. Defense counsel played a video during the doctor's deposition showing a professional football player being tackled from behind and being driven down to the ground "headfirst." The player laid helpless on the ground twitching as a result. The doctor then testified such an injury could result in injuries similar to Mr. Taranto. Of course, Mr. Taranto was not wearing a protective helmet when he was tackled from behind by Defendants.

Plaintiffs' two additional expert witnesses also testified during their depositions that the actions of the deputies amounted to excessive use of force, were not tactics officer are trained to utilize and did not conform to acceptable police practices. There was no firearms control established, no incident commander designated and a complete lack of supervision by the highest ranking deputy on scene. The Decedent's wife categorized defendants as being out of control. The Court will see from dash-cam footage the actions of the officer prior to their encounter with Mr. Taranto. The officers were on scene first to address a transformer explosion and then to address a "stolen vehicle." The vehicle was determined to not actually be stolen but rather the result of the owner's daughter and three friends taking the car for a joy-ride. Two of the friends were young African-American boys. The Court will see one of the deputies placing a young African-American boy sprawled out face first on the ground with the deputies firearm drawn and pointed at the back of the young man's head. The young man is clearly helpless and unarmed. This is type of conduct demonstrated by the deputies who appear to act unchecked, overreact and beyond the acceptable use of force. This is extremely dangerously conduct.

Defendants argue they had probable cause to arrest Mr. Taranto and as such the false arrest claims should be dismissed. As previously asserted by Plaintiffs, Mr. Taranto was in lawful possession of a duly licensed firearm at the time of his arrest. This fact was verified by the police at the time they were present inside Mr. Taranto's home prior to his arrest. There is no evidence at all indicating that Mr. Taranto acted in a threatening manner toward anyone. The deputies testified that Mr. Taranto never pointed his firearm at any of them.

Based upon the Criminal Court Information submitted by Defendants as part of the prosecution of Mr. Taranto, there is no statement at all to suggest that Mr. Taranto advanced upon the officers, pointed a weapon at them or used a weapon in any manner to suggest he intended to use a weapon upon the officers. The crimes charged required a demonstration of intent, which intent was not alleged as part of the criminal court informations or ensuing prosecution. *People v. Iftikari*, 185 Misc.2d 565 (2000). Given that Mr. Taranto was a licensee, especially given that he was on his own residential property, there is no presumption of unlawful intent pursuant to Penal Law § 265.15. Additionally, none of the Criminal Court Information's prepared by Defendants allege any facts to support the crime of Criminal Possession of a Weapon, Menacing or any other offense.

Plaintiffs maintain that the arrest of George Taranto was nothing more than a failed attempt by Defendants to justify the brutal attack upon Mr. Taranto by the Defendants. The criminal prosecution of Mr. Taranto did not result in a criminal conviction. As such, it is the Defendants' burden to prove Mr. Taranto's guilt of an offense. *Thompson v. Clark*, 142 S. Ct. 1332 (2022).

Plaintiffs maintain that claims against former Sheriff Langley are proper. Sheriff Langley was involved with the "investigation" of the use of force upon Mr. Taranto and simply rubber stamped the investigation as being an acceptable use of force. This is despite the deputies failing to follow their department's own protocol when injuries are sustained by persons in their custody. As previously asserted by Plaintiffs and contained within the public domain are the Sheriff's own statements that he was personally involved in this case, that he met with the officer who prepared the Use of Force Form, that he coordinated the changing of this form to remove the use of an impact weapon by police upon Mr. Taranto and that he had conversations with the officers to alter documents and testimony of the officer.

Of further concern was the deposition of the Putnam County District Attorney who testified that he investigated the use of force by the deputies. D.A. Tendy testified, these deputies acted properly and deserve a medal. Notably, however, DA Tendy was not familiar with the use of force policies of the Sheriff's Office or any laws or case-law, including Untied States Supreme Court decision, concerning the use of force by law enforcement personnel. This only serves to demonstrate the "cover-up" of the improper actions of the Defendants herein, all of which can be demonstrated through the evidence and testimony adduced during discovery.

Lastly, Plaintiffs maintain the wrongful death claim to be proper. The blow to Mr. Taranto's head caused an exacerbation of his condition, brain bleeds, subsequent surgery to the brain and acceleration of his condition leading to his ultimate death. Despite Defendants belief that Mr. Taranto suffered a mere scratch to his head as a result of this incident only serves to demonstrate the Defendants' lack of understanding of their actions and the responsibility that comes when an officer uses force upon another person.

The pre-motion conference is waived, and the parties are directed to submit their briefs according to the following briefing schedule:

Very truly yours,

/s *Thomas M. Gambino*

6/20/2025 - deadline for Defendants' motion for summary judgment
7/20/2025 - deadline for Plaintiffs' opposition papers
8/3/2025 - deadline for Defendants' reply papers

Thomas M. Gambino, Esq.

c:   James A. Randazzo, Esq. – via ecf

3

SO ORDERED.

_____
Hon. Victoria Reznik, U.S.M.J.

Dated: 4/21/2025